5712 Realty LLC v Ricketts (2025 NY Slip Op 50035(U))

[*1]

5712 Realty LLC v Ricketts

2025 NY Slip Op 50035(U)

Decided on January 16, 2025

Civil Court Of The City Of New York, Kings County

Jimenez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 16, 2025
Civil Court of the City of New York, Kings County

5712 Realty LLC, Petitioners,

against
Richard Ricketts, JOHN DOE and JANE DOE, Respondents

Index No. 83578-18

Tenenbaum Berger & Shivers LLP
90 Livingston Street
2nd Floor
Brooklyn, New York 11201
Attorneys for Petitioner — 5712 Realty LLC
Richard Ricketts
Self-Represented Litigant

Sergio Jimenez, J.

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of respondent's notice of motion (Seq. 20) and notice of motion (Seq. 21) and any other relief as the court may find appropriate:
Papers Numbered
Notices of Motion (Seq. 20 & 21) with affidavits and exhibits 1 (NYSCEF #52-53)
Affirmation in Opposition and exhibits 2 (Oral)
After argument and taking into account the above listed papers and petitioner's oral opposition (Messam v. Omeally, 52 Misc 3d 144[A][App Term 2d Dept 2nd, 11th and 13th Jud Dists, 2016]), the court denies both motions in their entirety. The respondent has been out of the premises, following an eviction, for around two (2) to three (3) years. The court has previously ruled on motions seeking to vacate the various orders made by this court, as such, they cannot be relitigated pursuant to the "law of the case" doctrine (Baron v. Baron, 128 AD2d 821 [2d Dept, 1987]). Previous decisions by Judges Scheckowitz, Fitzpatrick and Stoller struck respondent's ability to assert succession rights and denied the vacatur of those orders, the court must abide by [*2]those decisions. Respondent's avenue for relief from these orders lay with the Appellate Term at the time they were made.
The court appreciates, and is not unsympathetic to, the desperate situation facing most litigants in housing court, including those who have already been evicted. On the one side occupants and tenants stand to lose their housing and, given the costs of relocating combined with the dearth of housing options available, this is, at best, a traumatizing prospect. On the other side, housing someone who is unable to or refuses to pay rent may make ownership an impossibility, ultimately resulting in a foreclosure. Owners also may want the premises to house themselves or their family. These are both real and competing interests. They also, in this court's experience, cause litigants to become desperate. One occasional result of this desperation is that some litigants turn to the philosophy of sovereign citizens.
Historically, the sovereign citizen movement arises directly from "racist, antisemitic, antitax" group[s] that believed that government only existed on the local level (Charles E. Loeser, From Paper Terrorists to Cop Killers: The Sovereign Citizen Threat, 93 N.C. L. Rev. 1106 [2015]). However, these groups have now proliferated into groups outside of white nationalist militias.[FN1]
This belief system has spread through seminars and internet forums. The court must note that, as with all groupings of people, their philosophies are not monolith, and each individual may practice these philosophies to different degrees of intensity. Further, without a centralized leader or collective, their tenets may differ significantly by personality (Caesar Kalinowski IV, A Legal Response to the Sovereign Citizen Movement, 80 MTLR 153 [2019]).
In housing court, the most common manner in which Sovereign Citizens interact has been to engage in what is known as "paper terrorism." This tactic includes making voluminous filings of papers and collateral lawsuits that are "completely without merit," "transparently frivolous," and having "no conceivable validity in American law" (Patino Macia v. Annucci, 2022 WL 1539542 [United States District Court, W.D. New York 2022]; United States v. Jagim, 978 F2d 1032 [8th Cir. 1992]; United Sates v. Schneider, 910 F2d 1569 [7th Cir. 1990]). Litigants present their own names under copyright,[FN2]
argue that the court has no jurisdiction,[FN3]
that the judge must present their oath of office, that the court must obtain contractual consent from the [*3]sovereign citizen in order to have any capacity to enforce laws against them,[FN4]
attempt to discharge debts through means other than legal currency and generally act in a way to disrupt and delay the adjudication of their legal matters. It is no surprise that eventually the vast majority of these efforts fail. However, these efforts often severely delay proceedings.
One of the main beliefs is that the government holds no sway over these individuals, as such laws do not apply to them. The genesis of this belief may lay, in some cases, on the mistaken belief that when the United States abandoned the gold standard for currency in 1933, the government became bankrupt but saved itself from default by using citizens as collateral with other nations through the issuance of birth certificates and social security numbers. By "forcing" parents to apply for Social Security Cards and birth certificates for newborn children, this mistaken belief system argues, a shell corporation is created by the government commonly demarked by the spelling of the individual's name in all capitalized letters. It is their belief that by commodifying individuals as collateral each one has a value that may be redeemed with the treasury department. To that end, some sovereign citizens attempt to discharge/pay debts through the "transfer [FN5]
" of that value held by the government.
It is important to note that the court has questions about CPLR Article 12 considerations with regard to sovereigns. The standard for the appointment of a Guardian Ad Litem (GAL) in the context of housing court is generally whether the litigant is "an adult incapable of adequately prosecuting or defending his rights" (CPLR §1201). The belief system described above is "wholly frivolous" (SoFi Lending Corp. v. Williams, 2024 WL 1328207 [Court of Appeals of Ohio, Eight District, Cuyahoga County]). However, if it is a falsely held fixed belief, which means that it is not amenable to change in light of conflicting evidence, it could constitute a delusion (Cheryl M. Paradis, Elizabeth Owen and Gene McCullough, Evaluations of Urban Sovereign Citizens' Competency to Stand Trial, 46 J. Am. Acad. Psychiatry Law 158 [2018]). A delusion may be a symptom of a larger psychiatric diagnosis. However, the court lacks the expertise, or is, in its current state, woefully ill-equipped to determine the overlap (or exclusivity) of mental illness with strongly held political beliefs, as opposed to true delusions (Id.).
However, it is this court's adamant belief that the court has a responsibility to ask these questions for each and every individual appearing before it, especially in light of the invalid legal arguments presented. While the court has very serious concerns, especially given the general lack of cooperation between sovereign citizens and their counselors, both attorney and non-attorneys, about the effectiveness of GALs in these instances, the court should still make the inquiry (People v. Reid, 66 Misc 3d 874 [Sup. Ct. Bronx County 2020]; Mellie Ligon, The Sovereign Citizen Movement: A Comparative Analysis with Similar Foreign Movements and Takeaways for the United States Judicial System, 35 Emory Int'l L. Rev. 297 [2021]). This problem is exacerbated by the small numbers of GALs available to the court system and their [*4]already-crushing workload. In the instant proceeding, the respondent has been articulate and adamant about what he believes his rights entail. He understands why the petitioner commenced this proceeding, that this court exists to resolve these disputes and that he received an unfavorable decision. That he is incorrect in his legal analysis as to his rights, pursuant to a trial court decision, is of no consequence with regard to an CPLR Article 12 analysis.
The respondent has shown, through various acts and statements, that in some way he takes part in the sovereign citizen movement. For example, in his latest motions, the respondent seeks to interpose a claim for "creating a tremendous burden on daily survivability eroding his endowed inalienable rights . . . [therefore] requesting compensatory and punitive damages in the sum of $100,000000: One hundred million dollars" [sic]. Even were this court to have the jurisdiction to hear emotional distress damages, which it does not, to request this relief after a trial where the respondent lost borders on frivolity, if not outright harassment by litigation. It is also telling that despite the various orders to show cause that this court has refused to sign, the respondent-movant, cleverly submitted as sequence 20 and 21, which constitute the exact requests this court refused to sign, as notices of motion. As acts infer belief and intention, the court must conclude that the respondent is a sovereign citizen (Heidi E v. Wanda W, 210 AD2d 918 [4th Dept 1994]). The court's own analysis is supported by the observations made by Hon. Bruce Scheckowitz in his February 4, 2019 order. The court, however, notes that outside of the filing what amounts to barely intelligible quasi-legal papers, respondent has conducted himself respectfully before the court.
While petitioner made an oral request for sanctions, the request was not made in writing and will not now be considered, however, the respondent is notified of petitioner possibly seeking sanctions should further motion practice be engaged. Both motions are denied without prejudice to whatever appellate remedies the respondent has not exhausted. This constitutes the decision and order of the court.
Dated: January 16, 2025
Sergio Jimenez, JHC

Footnotes

Footnote 1:The court notes that the term "militia" is a loaded one. In this context, the court uses it not for the group of organized government-run armed forces protected by the Second Amendment, but rather the unsanctioned vigilante groups that have arisen throughout the violent history of this country. For further reading into these groups, the court would point readers towards well researched law review articles outlining some of the specific groups' geneses (James W. Ely, Jr., Strain of Violence: Historical Studies of American Violence and Vigilantism, 76 CLMLR 361 [1976]; Ric Simmons, Legal Vigilantes, 61 AMCRLR 157 [2024]; Jared A. Goldstein, The Klan's Constitution, 9 ALCRCLLR 285 [2018]; but see District of Columbia v. Heller, 554 US 570 [2008]).

Footnote 2:It is established law that a name is not a proper subject for copyright (Feist Publns, Inc. v. Rural Tel. Serv. Co., 499 US 340 [1991])

Footnote 3:People v. Williams, 203 AD3d 1571 [4th Dept 2022]

Footnote 4:Mellie Ligon, The Sovereign Citizen Movement: A Comparative Analysis with Similar Foreign Movements and Takeaways for the United States Judicial System, 35 Emory Int'l L. Rev. 297 (2021).

Footnote 5:In some cases, said transfer has included throwing a birth certificate at the court and storming out of the court room.